Claudia Navarro PINEDA, Individually; Susana Oregon Navarro, Administratrix of the Estate of Pedro Oregon Navarro, Deceased; Ana Isabel Lores, as Next Friend of Ashley Oregon–Lores, Minor Daughter of Pedro Oregon Navarro, Deceased; Blanca Lidia Viera, as Next Friend of Belinda Marili Viera, Minor Daughter of Pedro Oregon Navarro, Deceased, Appellants,

v.

CITY OF HOUSTON, Appellee.

No. 01–03–00125–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 8, 2004.

Rehearing Overruled Oct. 12, 2004.

Alice Oliver–Parrott, Maria Teresa Arguindegui, Burrow & Parrott, L.L.P., Houston, for Appellants.

Claudia Navarro Pineda, Houston, pro se.

Robert Cambrice, Assistant City Attorney, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Claudia Navarro Pineda, individually; Susana Oregon Navarro, administratrix of the estate of Pedro Oregon Navarro; Ana Isabel Lores, as next friend of Ashley Oregon–Lores, minor daughter of Pedro Oregon Navarro; and Blanca Lidia Viera, as next friend of Belinda Marili Viera, minor daughter of Pedro Oregon Navarro, appellants, appeal from the trial court's granting of a plea to the jurisdiction in favor of the City of Houston (City), appellee, based upon governmental sovereign immunity. We affirm.

## Background

On July 11, 1998, Houston Police Officers P.A. Herrada and J.R. Willis made a traffic stop of a vehicle occupied by Nicholas Stutes, John Stutes, and Ryan Baxter. Baxter was arrested for providing alcohol to minors and public intoxication. He also admitted to drinking alcohol and purchasing and smoking crack cocaine earlier that night. At the time, Baxter was on probation. On the way to the police station, Baxter offered to provide information about his claimed crack cocaine dealer, Rogelio Navarro, the brother of the decedent, Pedro Oregon Navarro, in exchange for his release. Herrada and Willis contacted other members of their unit, the Houston Police Department's (HPD) Southwest Gang Task Force.

Baxter subsequently provided information to the officers. Although the officers knew they were violating HPD policy by using a probationer as an informant without the permission of the probation authority and the supervising court, the officers and their supervisor agreed on a plan of action in which Baxter was to arrange a meeting to buy cocaine from Rogelio at a local restaurant. When Rogelio failed to appear at the restaurant, Baxter traveled with the police to Rogelio's residence at 6711 Atwell, apartment 16. The officers then devised a plan so that they could enter the home; Baxter was to knock on the door, and when the door opened, Baxter was to fall down in the doorway to prevent the door from closing as the officers rushed in. The officers' plan did not include obtaining consent to search the apartment.

When no one answered the door at Rogelio's residence, the group dispersed. While Herrada and Willis were transporting Baxter to jail, Rogelio contacted Baxter on his cell phone. Baxter set up another cocaine buy.

Officers Herrada and Willis, together with Officers Barrera, Tillery, Perkins, and the gang task force supervisor, Sergeant Strouse, reassembled and went with Baxter to Rogelio's apartment again. While Baxter knocked on the door, the officers waited by a column at the foot of the stairs, and initiated their plan of action. Without consent and without a search warrant, the officers entered Rogelio's apartment.

There were several people in the apartment, including Rogelio Navarro and Pedro Oregon Navarro. As the officers moved further into the apartment, and into the back room occupied by Pedro Oregon Navarro, Officer Barrera accidentally shot Officer Tillery in the back. This shooting was followed by a fusillade of over 30 rounds of ammunition from the officers, killing Pedro Oregon Navarro. The other occupants of the apartment were arrested. A subsequent search of the apartment failed to find drugs, but did find a handgun close to Pedro's body. An autopsy performed on Pedro's body showed that no drugs were in his system.

The HPD's Internal Affairs Division investigated the incident. The division concluded that Officers Strouse, Tillery, Barrera, Willis, Herrada, and Perkins had violated several of HPD's General Orders, resulting in their termination by the HPD.[1] A grand jury, however, failed

---

1. Officer Barrera was terminated for violating General Order 200–08 (conduct and authority); the United States Constitution (Fourth Amendment); Texas Penal Code section 39.03 (official oppression); General Order 600–17 (use of force); and General Order 100–01 (internal directives).

Officer Herrada was terminated for violating General Order 500–06 (disposition of arrested juveniles); General Order 500–02 (handling and transporting prisoners); General

to find a bill of indictment for murder against the officers.

Appellants filed suit in federal court against the City of Houston pursuant to 42 United States Code section 1983; they included supplemental state law claims under the Texas Wrongful Death Act [2] and the Texas Tort Claims Act.[3] The federal district court granted summary judgment to the City on the section 1983 claims and dismissed the state law claims with prejudice. *Pineda v. City of Houston,* 124 F.Supp.2d 1057, 1089–90 (S.D.Tex.2000). On appeal, the Fifth Circuit affirmed the district court's rendition of summary judgment, but modified the court's order dismissing the state claims to provide that the dismissal of the state law claims was without prejudice. *See Pineda v. City of Houston,* 291 F.3d 325, 335–36 (5th Cir. 2002).

On June 7, 2002, appellants filed suit in state court against the City, alleging their claims under the Texas Tort Claims Act and the Texas Wrongful Death Act. On December 9, 2002, the City filed a plea to the jurisdiction. The trial court conducted a hearing on the plea to the jurisdiction on December 20, 2002, and, on January 8,

2003, the trial court signed an order granting the City's plea and dismissing the case for want of subject matter jurisdiction. This appeal followed.

## Discussion

■ In their sole issue presented, appellants challenge the trial court's granting of the City's plea to the jurisdiction, based on the doctrine of sovereign immunity, and its dismissal of their claims.

## Standard of Review

■ A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Id.* at 446; *Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836, 839 (Tex.1967).

■ The existence of subject-matter jurisdiction is a question of law. *State*

---

Order 200–08 (conduct and authority); General Order 700–05 (evidence collection and control); General Order 600–16 (informants and other sources of information); the United States Constitution (Fourth Amendment); Texas Penal Code section 39.03 (official oppression); and General Order 100–01 (internal directives).

Officer Willis was terminated for violating General Order 600–16 (informants and other sources of information); General Order 200–08 (conduct and authority); the United States Constitution (Fourth Amendment); Texas Penal Code section 39.03 (official oppression); and General Order 100–01 (internal directives).

Officer Perkins was terminated for violating General Order 200–08 (conduct and authority); the United States Constitution (Fourth Amendment); Texas Penal Code section 39.03

(official oppression); and General Order 100–01 (internal directives).

Officer Tillery was terminated for violating General Order 200–08 (conduct and authority); the United States Constitution (Fourth Amendment); Texas Penal Code section 39.03 (official oppression); and General Order 100–01 (internal directives).

Sergeant Strouse was terminated for violating General Order 200–08 (conduct and authority); the United States Constitution (Fourth Amendment); Texas Penal Code section 39.03 (official oppression); and General Order 100–01 (internal directives).

**2.** TEX. CIV. PRAC. & REM.CODE ANN. § 71.002 (Vernon 1997).

**3.** TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1997).

*Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). Therefore, we review de novo the trial court's ruling on a plea to the jurisdiction. *Id.* In deciding a plea to the jurisdiction, a court may not consider the merits of the case, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

### Immunity

 Under the doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *See City of Amarillo v. Martin,* 971 S.W.2d 426, 427 (Tex.1998). Sovereign immunity can be waived only through the use of clear and unambiguous language. *County of Cameron,* 80 S.W.3d at 554; *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994); *City of Houston v. Rushing,* 7 S.W.3d 909, 914 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). The Texas Legislature enacted the Texas Tort Claims Act (TTCA) to waive sovereign immunity in certain limited circumstances. *See Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.1998). The TTCA provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. A city, such as Houston, as a political subdivision of the State, falls within the parameters of the TTCA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp 2004).

 For a governmental entity such as the City to be held liable for the acts of its employee under the TTCA: (1) the claim must arise under one of the three specific areas of liability listed in section 101.021 (property damage, personal injury, and death); and (2) the claim must not fall within an exception to the waiver of sovereign immunity. *See Scott v. Prairie View A & M Univ.,* 7 S.W.3d 717, 719(Tex.App.-Houston [1st Dist.] 1999 pet. denied); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 122 (Tex.App.-Houston [1st Dist.] 1995, no writ). The applicable exceptions to the waiver of sovereign immunity are found in section 101.057 of the Texas Civil Practice and Remedies Code, which provides:

> This chapter [waiving sovereign immunity] does not apply to a claim:
>
> (1) based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or
>
> (2) arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.057 (Vernon 1997). Thus, a governmental entity does not waive its sovereign immunity

to a party's claim for personal injury or death if that claim arises out of an intentional tort.

### Parties' Contentions

In their petitions, appellants alleged that the court "has jurisdiction over this claim under the Texas Tort Claims Act because the Texas Legislature waived Defendant City of Houston's sovereign immunity for claims involving personal injury and death caused by the negligent use of tangible personal property, if the defendant would, were it a private citizen, be liable to Plaintiffs according to Texas law." They claimed that Officers Barrera and Perkins, who were at all times acting within the course and scope of their employment with the City of Houston, and had a duty to exercise ordinary care and use their firearms reasonably and prudently, were negligent in using their service firearms, and that this negligence was a proximate cause of their damages and Pedro's death.

In its plea to the jurisdiction, the City alleged, first, that appellants failed to circumvent the intentional tort exclusion of the TTCA, section 101.057(2). The City alleged, second, that even if the officers' acts were not intentional torts, the waiver of immunity under section 101.021(2) of the TTCA for personal injury and death caused by the negligent use of personal property is inapplicable to waive the City's immunity for the officers' acts because the

officers' acts were not within the scope of their employment. Finally, the City contended that, even if the officers' acts were within the scope of their employment, they were discretionary acts for which the officers enjoyed official immunity, and therefore the City could not be derivatively liable. *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex.1995).[4]

The first question for this Court, therefore, is whether Pedro's death was proximately caused by the officers' intentional torts or by their negligence.

### Intentional Tort Exclusion

While the TTCA waives the sovereign immunity of a governmental entity for personal injury and death arising out of the use of tangible personal property, it specifically excludes waiver of immunity for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021(2), 101.057(2). Here, the City claims that it has immunity because the officers' actions were intentional and appellants have failed to circumvent the intentional tort exclusion. Appellants, on the other hand, contend that the intentional tort exception does not apply because Pedro's death was proximately caused by the officers' negligent performance of their official duties.

Appellants contend that Officer Barrera's initial negligent discharge of his firearm, accidentally shooting Officer Till-

---

4. Texas law distinguishes between "sovereign," or "governmental" immunity, which applies to governmental entities, and "official" immunity, which applies to governmental employees acting within the scope of their employment. *DeWitt v.*, 904 S.W.2d at 653. Official immunity is an affirmative defense that protects government employees from personal liability for the performance of discretionary functions in good faith and within their authority. *Id.* at 652; *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000). When official immunity shields the govern-

mental employee, sovereign or governmental immunity shields the governmental employer. *Clark*, 38 S.W.3d at 580. Appellants argue that the City had the burden of proving its official immunity defense as a matter of law below and that it failed to do so; thus, if we find that Pedro's death was proximately caused by the officers' negligent performance of their duties, we cannot conclude as a matter of law that the officers are entitled to official immunity or, *a fortiori*, that the City had proved its entitlement to governmental immunity for the acts of those employees.

ery in the back, resulted in several false impressions[5] that resulted in the officers' intentional shooting and killing of Pedro. Citing *Delaney v. University of Houston,* 835 S.W.2d 56, 60 (Tex.1992), appellants claim that section 101.057(2), the intentional tort exception, cannot be read so broadly as to except from the waiver of immunity any claim for injuries resulting from an intentional tort when negligent and intentional acts both contribute to the occasion of injury.

In *Delaney,* the Texas Supreme Court held that a negligence action by a rape victim against a state university was not barred by sovereign immunity where the plaintiff's cause of action was based on the university's alleged failure to provide her a secure residence and to fix a broken lock. The Supreme Court noted that section 101.057(2) of the TTCA precludes the extension of the TTCA's waiver of immunity to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." *Id.* at 59. However, it stated that the phrase "arising out of" in section 101.057(2) requires a certain nexus for the provision to apply; that nexus is between the claim and an intentional tort, and the intentional tortfeasor must be the governmental employee whose conduct is the subject of complaint. *Id.* at 59. In that case, the intentional tortfeasor, the rapist, was not the governmental employee whose conduct was the subject of Delaney's claims against the university.

▇▇ Here, the gravamen of appellants' claim is that City of Houston police officers wrongfully killed Pedro Oregon Navarro. Thus, in contrast to *Delaney,* the tortfeasors are the governmental employees whose conduct is the subject of the complaint, thereby satisfying section 101.057(2)'s requirement of a nexus between appellants' claims against the City and the intentional tort. If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. *See Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex.2001); *City of Laredo v. Nuno,* 94 S.W.3d 786, 789 (Tex.App.-San Antonio 2002, no pet.); *Tarrant County Hosp. Dist. v. Henry,* 52 S.W.3d 434, 450 (Tex.App.-Fort Worth 2001, no pet.); *Medrano v. City of Pearsall,* 989 S.W.2d 141, 144 (Tex.App.-San Antonio 1999, no pet.). A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence. *See Huong v. City of Port Arthur,* 961 F.Supp. 1003, 1008–09 (E.D.Tex.1997) (plaintiffs cannot circumvent intentional tort exception to waiver of liability by simply pleading negligence when shooting event upon which they base their claims is actually intentional tort); *Petta,* 44 S.W.3d at 580 (plaintiff's claim that officer was negligent in ignoring police procedure did not obviate fact that conduct was intentional; conduct complained of—officers' hitting car window, aiming gun, blocking car in with police cruiser, and firing at car's tires—was clearly intentional; despite plaintiff's claim that injuries were proximately caused by officer's and department's negligence, plaintiff's allegations fit squarely within section 101.057's exclusion); *Nuno,* 94 S.W.3d at 788 (despite plaintiff's efforts to phrase claims in terms of officer's negligent failure to properly place plaintiff in police vehicle and negligent indifference of other officers and city, focus of plaintiff's claims against city was officer's intentional tortious acts of using

---

**5.** Appellants claim that Officer Barrera's initial negligent discharge created the false impressions that Pedro (1) discharged a weapon, (2) shot Tillery, (3) was firing at the officers; and (4) was an imminent threat to the lives of the officers.

excessive force to arrest plaintiff and to illegally seize car, and was barred); *Medrano*, 989 S.W.2d at 144 (where focus of claim was on officers' alleged violent and negligent beating of handcuffed driver, intentional tort exception could not be circumvented merely by alleging negligent hiring, negligent training, and negligent failure to train).

In this case, appellants alleged in their petition that the officers were negligent, failed to exercise sound judgment, and failed to use reasonable care in operating and using their pistols, thus killing Pedro. However, despite appellants' efforts to phrase their claims in terms of negligence, their focus is on the shooting of Pedro. Appellants do not allege negligent acts of the City, the governmental unit, except though the doctrine of respondeat superior. Furthermore, appellants admit that "the actual shooting of [Pedro Oregon] Navarro was not an act of negligence." They nevertheless contend it was a "foreseeable consequence of a single act of negligence in Officer Barrera's failure to handle his firearm properly." Thus, they claim that "the mere fact that the shooting of [Pedro Oregon] Navarro may have been intentional has no bearing on [their] negligence claim."

Despite Officer Barrera's alleged negligence in shooting Officer Tillery, the pleadings demonstrate that Barrera and the other officers intended to shoot Pedro because they believed, albeit incorrectly, that he was armed and dangerous.[6] Appellants allege that, after the initial discharge, Barrera fired 16 rounds into Pedro's bedroom. Barrera also reloaded his gun and resumed firing at Pedro, sometimes at point blank range, as he lay on the floor. Appellants do not allege an accidental shooting, such as the inadvertent discharge of the pistol; nor do the pleadings indicate that the shooting of Pedro was anything but intentional. Thus, as in most cases, the intent to injure can be inferred from the actors' conduct.[7] Although the officers' may not have intended their initial actions, such as Officer Barrera's shooting Officer Tillery, they did intend the ultimate injury—shooting Pedro. *See Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985) (difference between negligence cause of action and intentional tort is not whether defendant intended the acts, but whether the defendant intended the resulting injury). Because the focus of appellants' claims is on the officers' intentional tortious conduct (wrongful use of force, wrongful use of excessive force, assault), the City's immunity is not waived. *See Nuno*, 94 S.W.3d at 789; *Medrano*, 989 S.W.2d at 141.

After looking to the jurisdictional evidence and allegations, taking them as true,

6. The City's "Investigation Summary" indicates that Officer Barrera's shooting of Officer Tillery was classified as accidental—not justified. However, concerning the other shots, the Summary reflects that "the investigation sufficiency proved that Pedro Oregon Navarro was armed," that the officers feared for their lives, and that the shots fired by Herrada were classified as "intentional—justified." The investigation also "indicated the manner in which Barrera discharged his weapon did not reflect proper consideration of his immediate surroundings" and, therefore, Barrera violated General Order 600–17 (use of force). The Summary also reflects that Perkins believed that Barrera was in a gun battle with a suspect, so he began firing, despite failing to see a weapon. The Summary indicates that "there is insufficient evidence to either prove or disprove" whether Perkins violated General Order 600–17 (use of force).

7. Intent is established when facts demonstrate that the actor desired to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it. RESTATEMENT (SECOND) OF TORTS § 8A (1965).

and construing them in favor of the appellants, we conclude that appellants' petitions do not present a claim for which immunity is waived by the TTCA. Therefore, the trial court did not err in granting the City's plea to the jurisdiction and dismissing appellants' claims for lack of jurisdiction. We overrule appellants' sole issue.

Because we conclude that the City has immunity under the intentional tort provision of the TTCA, section 101.057, we do not discuss appellants' additional claims.

## Conclusion

We affirm the trial court's order granting the City's plea to the jurisdiction and dismissing appellants' claims.