NO. 07-10-00308-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



AUGUST
18, 2011

 



 

ROY JON, APPELLANT

 

v.

 

LESLEY DINWIDDIE, ET AL.

APPELLEES



 



 

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2009-546,985; HONORABLE RUBEN REYES, JUDGE



 



 

Before CAMPBELL
and HANCOCK, JJ. and BOYD, S.J.[1]

 

MEMORANDUM OPINION

Appellant, Roy Jon, an inmate
proceeding pro se sued ten individual defendants and both the Texas Department
of Criminal Justice (TDCJ) and the University of Texas Medical Branch (UTMB),
alleging a host of claims ranging from assault to use of prison “food loaf” as
cruel and unusual punishment.  Jon
alleged that these various acts and omissions violated a number of his
constitutional and statutory rights.  On
the defendants’ motion, the trial court dismissed Jon’s claims as
frivolous.  We will affirm the trial
court’s dismissal.

Factual and Procedural History

            Jon
alleges that, on October 26, 2008, prison officials at the Montford Unit
performed a “shakedown” during which an officer acted aggressively toward Jon
and destroyed some of his personal property. 
Jon claims that he was sent to a solitary cell for no reason during the
search.  After the search, what remained
of Jon’s property was returned to him, and Jon was moved to another cell.

Jon announced he was on a hunger
strike on October 28, during or after the prison went into lockdown and a
second search of the prison cells was performed.  Prison staff ordered Jon to carry his property
to the gym.  Jon maintained that he could
not do so because he was ill after haven taken his medication without food and
insisted that the staff provide him a cart. 
The staff refused.  Lesley
Dinwiddie arrived in response to the disagreement and Jon again expressed that
he wanted a cart to carry his property to the gym.  According to Jon, Dinwiddie responded by
slamming Jon against a wall and placing him in restraints.

            Defendant
Zulfiquar Hussain then joined in to assist Dinwiddie, and Jon was placed in
another cell.  In his petition, Jon
advances an undeveloped assertion that Hussain, perhaps with the assistance of
other unnamed staff members, committed theft.[2]  The TDCJ, he claims, was aware of this
incident and permitted the staff’s “negligent use of security devices and
premises.”

            As
a result of Jon’s conduct during the search, disciplinary action was taken
against him.  Jon claims that he was
denied procedural and substantive due process during the disciplinary
proceeding by Richard Wathen, Terry Tucker, Joel Guana, and the TDCJ.  As a result of the disciplinary procedure,
Jon was placed on twenty-five days of commissary and cell restriction.  Following the alleged instances of
mistreatment during the lockdown, Jon claims, defendants Allen Hanretta and
Wendy Heckler were deliberately indifferent to Jon’s suffering at the hands of
prison staff and refused to provide him with necessary medical care.

            Jon
also complains of a later incident involving a food tray that, he says, was
placed in the proper location for it to be picked up following a meal.  Defendant Jeremy Boggs apparently wanted Jon
to move it elsewhere and, when Jon refused, kicked the tray into the cell and
came within five inches of hitting Jon. 
By Jon’s account, this close call caused him mental anguish.  Jon claims that, by kicking the tray in Jon’s
direction, Boggs violated Jon’s protection against cruel and unusual punishment
and that the TDCJ knew of Boggs’s behavior and failed to maintain adequate
surveillance and inspection that would prevent Boggs from negligently using the
food tray as a weapon.

            Jon
refused to return the kicked tray to prison staff when requested.  He demanded that a supervisor come down to
get the tray so that Jon could report that Boggs kicked the tray into his
cell.  As a result of Jon’s refusal to
comply with an order to bring the food tray to the proper location, he was put
on “food loaf.”  Jon claims that “food
loaf” was imposed without supervisor or warden approval and that such
imposition by defendants Joshua Keeney, Frank Renduf, Guana, Wathen, and Tucker
caused him mental and physical anguish and was retaliatory in nature.  He maintains that having to eat “food loaf”
for twenty-one meals is cruel and unusual punishment.  The TDCJ, Jon claims, knew of and approved
this negligent use of “food loaf.”         

Based on these assertions, Jon sued
ten individual defendants, the TDCJ, and UTMB for a variety of statutory and
constitutional violations.  The State
responded by filing a motion to declare Jon a vexatious litigant and a motion
to dismiss his suit pursuant to Chapter 14 of the Texas Civil Practice and
Remedies Code.  The trial court denied defendants’
motion to declare Jon a vexatious litigant but granted their motion to dismiss
Jon’s suit as frivolous pursuant to Chapter 14.

Jon appealed the dismissal and, in a
forty-six page handwritten brief, brings eleven issues for this Court’s
review.  Through ten of his issues, he reasserts
the factual and legal bases of his various claims against defendants.  The underlying contention of Jon’s issues is
that the trial court erroneously dismissed his lawsuit.  In his final issue, he also complains of
error in the discovery process.

 

 

Applicable Law and Standard of Review

Chapter 14 of the Texas Civil
Practice and Remedies Code applies to an inmate’s suit in which an affidavit or
unsworn declaration of inability to pay costs is filed by the inmate.  See Tex.
Civ. Prac. & Rem. Code Ann. § 14.002 (West 2002).  Among the several grounds on which a trial
court may dismiss such a suit is the finding that the inmate’s suit is
frivolous or malicious.  See id.
§ 14.003(a)(2) (West 2002).  In
determining whether a claim is frivolous or malicious, the trial court may
consider whether (1) the claim’s realistic chance of ultimate success is
slight, (2) the claim has no arguable basis in law or in fact, (3) it is clear
that the party cannot prove facts in support of the claim, or (4) the claim is
substantially similar to a previous claim filed by the inmate because the claim
arises from the same operative facts.  Id.
§ 14.003(b).

We review a trial court’s dismissal
of a lawsuit brought by an inmate who had filed an affidavit or declaration of
inability to pay costs for an abuse of discretion.  In re Douglas, 333 S.W.3d 273, 293
(Tex.App.—Houston [1st Dist.] 2010, pet. denied).  Under this standard of review, the appellant
inmate must show that the trial court’s action was arbitrary or unreasonable in
light of all the circumstances in the case. 
Id.  While, generally, we
review dismissals of inmate litigation under Chapter 14 for an abuse of
discretion, we review de novo the
specific question whether there was an arguable basis in law for an inmate’s
claims.  Id.  To determine whether the trial court properly
concluded that there was no arguable basis in law for an inmate’s suit subject
to Chapter 14, we must examine the types of relief and causes of action the
inmate pleaded in his petition to determine whether, as a matter of law, the
petition stated a cause of action that would authorize relief.  Id.

Analysis

Claim of Assault

            Jon
claims that, in response to Jon’s medical complaints during the second search,
Dinwiddie used excessive force in such a manner and degree as to constitute an
assault.[3]  To put Jon’s contention in its appropriate
context, we note that the facility was in lockdown, and Jon admitted that he
refused to obey the staff’s orders to carry his property to the gym that day,
though he maintains that he was physically unable to do so as a result of his
illness.  In light of the evidence, Jon’s
refusal to obey an order during lockdown invokes security considerations
associated with the privileged use of force in a correctional facility:

An officer or employee of a correctional facility is justified in using
force against a person in custody when and to the degree the officer or
employee reasonably believes the force is necessary to maintain the security of
the correctional facility, the safety or security of other persons in custody
or employed by the correctional facility, or his own safety or security.

Tex. Penal
Code Ann. § 9.53 (West
2011).

Dinwiddie’s written statement
concerning the incident cited Jon’s refusal to leave the open cell for the
required search as the basis for the decision to place Jon in restraints.  Dinwiddie denied slamming Jon against a wall,
squeezing his neck, or twisting his arm and, instead, explained that Jon
eventually did comply with his orders to turn around and face the wall.  Two correctional officers who witnessed the
incident described the incident similarly.

Jon complains that, as a result of
the alleged assault by Dinwiddie, he suffered shoulder and back injuries, neck
strain, and migraines.  We note that medical
records that Jon provides do not support his contentions that he sustained
injuries as a result of his encounter with Dinwiddie.  Medical records pre-dating the incident at
issue show that Jon complained of shoulder pain in early October and was treated
for that condition.  Also inconsistent
with Jon’s account, nurses’ notes taken during a visit a few days after the
encounter with Dinwiddie demonstrate that Jon complained that his back pain was
a result of force used against him two years earlier and that his back had been
hurting since he had to carry his property to the gym during lockdown.  The attending nurse reported that there was
no redness or swelling and that Jon had full range of motion.  There was no mention of Jon’s reports of
migraines or neck strain.

In the factual context, the trial
court could have concluded that it was reasonable to place Jon in
restraints.  Nothing, other than Jon’s
assertions that conflict with other accounts and evidence, suggest that Dinwiddie
used force beyond that which was reasonable under the circumstances.  Further, there is no evidence that Jon
sustained injuries as a result of his interaction with Dinwiddie on that
day.  Based on the state of the record,
the trial court would have been within its discretion to have found that Jon’s
chances of overcoming Dinwiddie’s Section 9.53 privilege to use reasonable
force on these facts is but slight. 
Alternatively, the trial court could have found that it was clear that
Jon cannot prove facts to support his claim that Dinwiddie assaulted him as
alleged.[4]  We overrule appellant’s contentions related
to an assault by Dinwiddie.

Claims Related to Disciplinary Action

On appeal, Jon maintains that he was
denied procedural and substantive due process during the 2008 disciplinary
action related to Jon’s conduct during the second search.  After sorting through and reading the numerous
grievances in appendices and in the record, most of which are unrelated to
Jon’s encounter with Dinwiddie, it has become clear that Jon utilizes the
grievance system with startling regularity, often filing grievances that
overlap in time and topic.  Though it
does appear that Jon complains on appeal of the disciplinary case related to
the encounter with Dinwiddie, his petition identified the case at issue as
disciplinary case number 20090131298, which relates to the food tray incident
and as a result of which he was placed on food loaf.  On appeal, Jon identifies the case at issue
as disciplinary case 20090058995, which, according to his allegations, related
to the Dinwiddie encounter and for which he was placed on commissary and cell
restriction for twenty-five days. 
Regardless of which case the trial court understood to be at issue, it
would have been correct to conclude that either punishment–food loaf or
commissary and cell restriction–does not raise due process concerns because
such punishments are simply changes in the conditions of Jon’s confinement.

The Due Process Clause does not
protect every change in the conditions of confinement having a substantial
adverse impact on the prisoner.  Sandin
v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed. 2d 418 (1995).  A prisoner’s liberty interest is limited to
freedoms from restraint which impose atypical and significant hardships on the
inmate in relation to the ordinary incidents of prison life.  Id. at 484.  Specifically, cell restrictions and loss of
commissary privileges are merely changes in the conditions of an inmate’s
confinement and do not implicate due process concerns.  Hamilton v. Williams, 298 S.W.3d 334,
341 (Tex.App.—Fort Worth 2009, pet. denied) (citing Malchi v. Thaler,
211 F.3d 953, 958 (5th Cir. 2000), and Madison v. Parker, 104 F.3d 765,
767–68 (5th Cir. 1997)).

Here, the trial court could have
concluded that the punishment at issue did not represent an “atypical and
significant hardship[]” and that, therefore, Jon’s claims relating to due
process in his disciplinary hearing had no basis in law.  See Sandin, 515 U.S. at
484.  We overrule Jon’s contentions on
this issue.

Claims of Cruel and Unusual
Punishment

            It
appears that Jon claims that he was subject to cruel and unusual punishment in
violation of the Eighth Amendment when (1) he was forced to eat food loaf as a
disciplinary measure, (2) he was denied medical care, and (3) he was nearly hit
by the tray a staff member kicked in his direction.  See U.S.
Const. amend. VIII.

The Eighth Amendment “prohibits the
infliction of ‘cruel and unusual punishments’ on those convicted of
crimes.”  Wilson v. Seiter, 501
U.S. 294, 296, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). That is to say, the
treatment a prisoner receives and the conditions in which he is confined are
subject to scrutiny under the Eighth Amendment. 
See Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475,
125 L.Ed.2d 22 (1993).  As part of the
Eighth Amendment protection, prison officials are required to provide humane
conditions of confinement by ensuring that inmates receive the basic
necessities of adequate food, clothing, shelter, medical care, and personal
safety.  See Farmer v. Brennan,
511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

An Eighth Amendment violation exists
where the deprivation of even a single identifiable human need, such as food,
warmth, or exercise, is caused by prison officials’ wanton disregard for the
prisoner's welfare.  See Wilson,
501 U.S. at 304.  However, not every
deprivation is an Eighth Amendment violation. 
To establish an Eighth Amendment violation regarding conditions of
confinement, an inmate must satisfy two requirements.  First, the deprivation alleged must be,
objectively, sufficiently serious, and, secondly, a prison official must have
been deliberately indifferent to inmate health or safety.  See Farmer, 511 U.S. at 834.

“Food Loaf”

            Jon
asserts that defendants Keeney, Renduf, Tucker, Guana, and Wathen used “food
loaf” in such a way as to constitute cruel and unusual punishment under the
Eighth Amendment.  However, Jon’s claims
regarding the “food loaf” do not rise to the level of an Eighth Amendment
violation.  Other than his expression of
distaste or dissatisfaction with the “food loaf,” Jon presents no evidence or
argument that he suffered a physical or mental injury or developed a physical
or mental condition as a result of having to eat “food loaf” for a week.  He does not point to evidence that the “food
loaf” was so nutritionally inadequate or served in a condition that it would
constitute a deprivation of a human need. 
The record shows that “food loaf” was served in response to Jon’s
reported conduct in the food tray incident. 
That being so, we cannot say that the “food loaf” was anything more than
a “routine discomfort inherent in the prison environment.”  See ‘Umar v. Price, No.
09-00-00031-CV, 2001 Tex. App. LEXIS 2232, at *12 (Tex.App.—Beaumont Apr. 5,
2001, no pet.) (not designated for publication).

The trial court could have reasonably
concluded that Jon failed to satisfy the first requirement of an Eighth
Amendment violation that there be a sufficiently serious deprivation of an
identifiable human need.  We overrule
Jon’s contentions regarding cruel and unusual punishment in the form of “food
loaf.” 

Medical Needs

Despite the presence of a number of
medical records noting Jon’s complaints about the incident but finding no
notable injury, it would appear that, two months after the incident, Jon filed
a grievance alleging that he was being denied proper medical attention for
physical and mental injuries related to the incident.  Still setting aside any considerations that the
defendants against whom Jon makes these claims would enjoy immunity, we note
that the record suggests that appellant received a number of visits from the
prison’s medical staff over the days at issue.

Ultimately, it would seem, appellant
was unhappy with the medical treatment he received.  However, disagreement or dissatisfaction with
medical treatment received is not sufficient to serve as “deliberate
indifference” such that the disregard of Jon’s medical needs would violate the
Eighth Amendment.  See Estelle
v. Gamble, 429 U.S. 97, 104–06, 97 S.Ct. 285 50 L.Ed.2d 251 (1976).  Even assuming that Hanretta and Heckler were
negligent, a finding which we do not make here, mere negligence is insufficient
to establish the deliberate indifference required for an Eighth Amendment
violation.  See id. at 106.

The trial court could have reasonably
concluded that Jon cannot prove facts to support his claim that Hanretta and
Heckler acted with deliberate indifference to Jon’s serious medical needs such
that their medical treatment would amount to a violation of the Eighth
Amendment.  We overrule Jon’s contentions
of deliberate indifference on the part of Hanretta and Heckler.

Kicked Tray

            Jon
claims that Boggs used excessive force against him when Boggs kicked the tray
inside Jon’s cell in Jon’s direction.  Jon characterizes this action as conduct
subjecting Jon to cruel and unusual punishment. 
Jon made clear to the trial court, both in his petition and at the
hearing on the motion to dismiss, that the tray did not hit him.

Whenever prison officials are accused
of using excessive force in violation of the Eighth Amendment, the core
judicial inquiry is “whether [the] force was applied in a good faith effort to
maintain or restore discipline, or maliciously and sadistically to cause harm.”  Wilkins v. Gaddy, 130 S.Ct. 1175,
1178, 175 L.Ed.2d 995 (2010) (per curiam) (citing Hudson v. McMillian,
503 U.S. 1, 112 S.Ct. 995, 117 L. Ed. 2d 156 (1992)).  Although lack of an injury does not always
defeat an excessive force claim, it is relevant in determining whether a
violation occurred.  Id. at
1177–78.  The extent of injury may also
provide some indication of the amount of force applied.  Id. at 1178.

Based on cases dealing with excessive
force in the Eighth Amendment context, including Wilkins, the trial
court could have concluded that, even if Boggs did kick the tray in Jon’s
direction, such action was not objectively of such a serious nature that it
could be said to be done to “maliciously and sadistically cause harm.”  That is, the trial court could have concluded,
within its discretion, that the chance of this claim’s success was slight or
that Jon would be unable to prove facts to support his claim.  We overrule Jon’s contentions relating to
this issue.

Claims against TDCJ and UTMB

            In
the absence of a relevant waiver of immunity, these two entities, as units of
the State, enjoy sovereign immunity. 
Jon’s claims that the TDCJ negligently used tangible personal property
in the forms of restraints and “food loaf” does not invoke an applicable waiver
of the TDCJ’s sovereign immunity.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021(2) (West 2011).  Though Jon’s
petition attempts to couch allegations against TDCJ in terms of negligence, a
careful reading reveals that his allegations more accurately sound in
intentional tort.  And the Texas Tort
Claims Act (TTCA) specifically provides that the negligent use of property
exception does not apply when a party claims intentional tort.  See id. § 101.057(2) (West
2011).  Jon’s attempts to cast his claims
in terms of negligence fail; the true nature of his claims more closely
resembles allegations of intentional misconduct.[5]

            That
said, there does not appear to be a waiver of immunity applicable to Jon’s
claims such that the TDCJ would be subject to suit.  Therefore, looking at Jon’s claims against
the TDCJ, the trial court could have reasonably concluded their “realistic
chance of ultimate success is slight.”  See
id. § 14.003(b)(1).  We overrule
Jon’s contentions to the contrary.

            The
record shows that Jon’s claims against UTMB would likewise fail in that it
appears the TTCA does not provide an applicable waiver by which Jon could
successfully pursue his claims against UTMB. 
From our reading of Jon’s contentions, it appears he contends that UTMB
knew of and approved the alteration of his medical records.  He attempts to characterize this practice as
negligent use of medical records.[6]  His own contentions, however, belie his
efforts to characterize this matter as negligence.  He unequivocally accuses prison staff and
TDCJ of knowingly altering records in furtherance of efforts to cover up an
assault by Dinwiddie.  It is well
established that, if a plaintiff pleads facts which amount to an intentional
tort, no matter if the claim is framed as negligence, the claim generally is
for an intentional tort and is barred by the TTCA.  See Petta, 44 S.W.3d at 580; Pineda
v. City of Houston, 175 S.W.3d 276, 282–83 (Tex.App.—Houston [1st Dist.]
2004, no pet.).  The trial court did not
abuse its discretion by dismissing claims against UTMB as frivolous.  

Complaints Regarding Discovery

            On
appeal, Jon urges that the trial court committed error in some manner
associated with the discovery process. 
But he does not identify an adverse ruling on which he bases his
complaint.  That being so, there is
nothing preserved for our review.  See
Tex. R. App. P. 33.1(a)(2).

Conclusion

            Having
overruled appellant’s points of error, we affirm the trial court’s judgment.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 











[1]  John T. Boyd,
Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.





[2]
Though done without a great deal of development,
Jon claimed in his petition that Hussain took some of Jon’s personal
property.  On appeal, Jon mentions the
theft of personal property but does not appear to advance an independent
argument regarding the viability of his claim of theft, if any, in relation to
the trial court’s dismissal.

 





[3]
For the purposes of our analysis and due to the
unclear nature of Jon’s claims against the ten individual defendants, we set
aside any considerations regarding immunity as it applies to the individual
defendants.





[4]
Further, though the trial court could not have
concluded that Jon’s claims had no arguable basis in fact if it had not held a hearing, see Hector v.
Thaler, 862 S.W.2d 176, 178 (Tex.App.—Houston [1st Dist.] 1993, writ
denied), we cannot say that the trial court was so constrained after having
held a hearing in which Jon participated by telephone.

 





[5]
That is, the nature of the complained-of conduct
sounds more accurately in intentional tort if we assume the conduct would
constitute anything at all more than a reasonable use of force in a
correctional facility.  See Tex. Penal Code Ann. § 9.53.

  





[6]
We would add that information is not considered
tangible personal property, since it is an abstract concept that lacks
corporeal, physical, or palpable qualities. 
State Dep’t of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex.
2001).  And simply reducing information
to writing on paper does not make the information “tangible personal property”
for the purposes of the TTCA.  Id.
(citing Dallas County v. Harper, 913 S.W.2d 207, 207–08 (Tex. 1995)).