FILED IN
1st COURT OF APPEALS
HOUSTON, TX
December 16, 2015
CHRISTOPHER A. PRINE,
CLERK

No. 01-15-00930-CV

_____

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

_____

HARRIS COUNTY, TEXAS,

> *Appellant*,

v.

STEPHANIE JO BAKER,

> *Appellee*.

_____

On Appeal from the 295th District Court
Harris County, Texas, Cause No. 2014-02549

_____

## BRIEF OF APPELLANT

_____

VINCE RYAN
Harris County Attorney

KEITH A. TOLER
Assistant County Attorney
State Bar No. 24088541

HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5265
Fax: (713) 755-8924
Email: Keith.Toler@cao.hctx.net

*Counsel for Appellant*
*Harris County, Texas*

## IDENTITY OF PARTIES AND COUNSEL

| **Appellant** | **Counsel** |
|---|---|
| Harris County, Texas | VINCE RYAN<br>Harris County Attorney<br>*Of Counsel*<br><br>F. CLINTON GAMBILL II<br>Senior Assistant County Attorney<br>*Trial Counsel*<br><br>KEITH A. TOLER<br>Assistant County Attorney<br>*Appellate Counsel*<br><br>HARRIS COUNTY ATTORNEY'S OFFICE<br>1019 Congress, 15th Floor<br>Houston, Texas 77002 |

| **Appellee** | **Counsel** |
|---|---|
| Stephanie Jo Baker | L. JAMES KRELL<br>RON S. RAINEY<br>*Trial and Appellate Counsel*<br><br>TRITICO RAINEY, PLLC<br>1523 Yale St.<br>Houston, Texas 77008 |

## TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................ii

Table of Contents ................................................................................. iii

Index of Authorities .............................................................................. v

Statement of the Case ............................................................................2

Statement of Jurisdiction .......................................................................2

Statement Regarding Oral Argument .......................................................2

Statement Regarding Record References ..................................................3

Issues Presented ...................................................................................3

Statement of Facts ................................................................................4

Summary of the Argument .....................................................................9

Argument ...........................................................................................11

I.     The standard of review is *de novo*.....................................................11

II.    Baker's alleged injury from the use of handcuffs during her arrest arises out of battery, an intentional tort for which the Tort Claims Act expressly retains governmental immunity.....................................12

III.    The Tort Claims Act does not waive governmental immunity over Baker's claim of injury from the use of (1) handcuffs while in the booking room, (2) the booking room, or (3) the booking-room contents. ..........................................................................17

      A.    Baker's booking-room claim arises out of battery, for which the Tort Claims Act retains governmental immunity. ..................17

      B.    The handcuffs, booking room, and booking-room contents did no more than furnish the condition that made Baker's injury possible..........................................................................20

IV.     Baker amended her pleadings after Harris County filed its plea
        to the jurisdiction but before the district court ruled on it, so she
        should not be allowed another attempt to cure.....................................24

Conclusion & Prayer....................................................................................26

Certificate of Compliance............................................................................27

Certificate of Service ..................................................................................27

Appellant's Appendix ..................................................................................28

        1)      District Court Order (Oct. 14, 2015)

        2)      Texas Civil Practice & Remedies Code § 101.021

        3)      Texas Civil Practice & Remedies Code § 101.057

        4)      *City of Watauga v. Gordon*, 434 S.W.3d 586 (Tex. 2014)

# INDEX OF AUTHORITIES

**Cases**                                                               **Page**

*City of Houston v. Davis*,
  294 S.W.3d 609 (Tex. App.—Houston [1st Dist.] 2009, no pet.).........20

*City of Waco v. Hester*,
  805 S.W.2d 807 (Tex. App.—Waco 1990, writ denied).......................21

*City of Watauga v. Gordon*,
  434 S.W.3d 586 (Tex. 2014) ......................................................... 12, 13

*Dallas Cnty. MHMR v. Bossley*,
  968 S.W.2d 339 (Tex. 1998) ......................................................... 20, 21

*Martinez v. City of Brownsville*,
  No. 13-00-425-CV, 2001 WL 1002399
  (Tex. App.—Corpus Christi Aug. 31, 2001, pet. denied) .....................21

*Nunez v. City of Sansom Park*,
  197 S.W.3d 837 (Tex. App.—Fort Worth 2006, no pet.) .....................21

*Pineda v. City of Houston*,
  175 S.W.3d 276 (Tex. App.—Houston [1st Dist.] 2004, no pet.).........14

*Retzlaff v. Texas Dep't of Criminal Justice*,
  135 S.W.3d 731 (Tex. App.—Houston [1st Dist.] 2003, no pet.).........23

*Rusk State Hosp. v. Black*,
  392 S.W.3d 88 (Tex. 2012) .................................................... 12, 20, 24

*Scott v. Prairie View A&M Univ.*,
  7 S.W.3d 717
  (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ...................... 21, 22

*Texas Dep't of Criminal Justice—Cmty. Justice Assistance Div. v. Campos*,
  384 S.W.3d 810 (Tex. 2012) ............................................................24

**Cases—Continued**                                                      **Page**

*Texas Dep't of Parks & Wildlife v. Miranda*,
     133 S.W.3d 217 (Tex. 2004) ........................................................ 11, 24

*Vela v. City of McAllen*,
     894 S.W.2d 836 (Tex. App.—Corpus Christi 1995, no pet.)................21

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West 2015) ...............................2

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2015) .................... 12, 20

Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (West 2015) ...........................12

Tex. Penal Code Ann. § 22.01 (West 2015) ...................................................13

No. 01-15-00930-CV
_____

_____

HARRIS COUNTY, TEXAS,

*Appellant*,

v.

STEPHANIE JO BAKER,

*Appellee*.

_____

On Appeal from the 295th District Court
Harris County, Texas, Cause No. 2014-02549

---

## BRIEF OF APPELLANT
_____

To the Honorable Justices of the First Court of Appeals:

Harris County is immune from Baker's claims of injuries during her lawful arrest and booking in the Harris County jail. Because both claims arise out of intentional torts, for which the Tort Claims Act expressly retains immunity, the district court should have granted Harris County's plea to the jurisdiction and dismissed Baker's claims. Therefore, Harris County respectfully asks this Court to reverse the district court order denying Harris County's plea to the jurisdiction, to render judgment in favor of Harris County, and to dismiss Baker's claims.

## STATEMENT OF THE CASE

In this suit for damages, Appellant Harris County, Texas, filed a plea to the jurisdiction challenging the district court's subject-matter jurisdiction over Appellee Baker's claims.[1] The district court denied Harris County's plea in an appealable interlocutory order, and Harris County appealed.[2]

## STATEMENT OF JURISDICTION

This Court has jurisdiction under section 51.014(a)(8) of the Civil Practice and Remedies Code to review the district court's interlocutory order denying Harris County's plea to the jurisdiction.[3]

## STATEMENT REGARDING ORAL ARGUMENT

Harris County believes the facts and legal arguments in this case are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. However, Harris County welcomes the opportunity to present oral argument if the Court determines it would be helpful.

---

[1]    *See generally* C.R. at 10–20 (Harris County's Plea to the Jurisdiction), 69–76 (Baker's First Amended Petition), 77–85 (Supplement to Harris County's Plea to the Jurisdiction).

[2]    C.R. at 112 (Order), 115–16 (Harris County's Notice of Appeal).

[3]    Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2015).

## STATEMENT REGARDING RECORD REFERENCES

On appeal, the Clerk's Record is designated as "C.R." There is no Reporter's Record in this appeal of an interlocutory summary order denying Harris County's plea to the jurisdiction.

## ISSUES PRESENTED

### Issue 1

The Tort Claims Act expressly retains governmental immunity for an injury arising out of an intentional tort even if the plaintiff couches her claims in terms of negligence. The Texas Supreme Court recently determined that a lawful arrest is an intentional tort, namely battery. Baker alleges she was injured by a negligent use of handcuffs during her lawful arrest. Is governmental immunity preserved for Baker's arrest-related claim?

### Issue 2

If a claim does not arise out of an intentional tort, the Tort Claims Act waives governmental immunity for the negligent use of tangible property. But the property must do more than merely furnish the condition making the injury possible. Baker claims she was injured in the booking room by the deputy's use of handcuffs, the booking room, and/or the property inside the booking room. Is sovereign immunity preserved because (1) Baker's claims arise out of an intentional tort or (2) the property only furnished the condition making Baker's injury possible?

Stephanie Jo Baker was arrested by a Harris County Sheriff's Office (HCSO) deputy on January 24, 2012, in a parking lot for possession of a controlled substance.[4] She was intoxicated when arrested and booked into the Harris County jail.[5] Baker alleges she was injured by the arresting deputy's use of handcuffs during her arrest and again in the booking room where she fell down.[6] Baker sued Harris County, Texas, alleging that her injuries occurred as a result of Harris County's "negligent use and/or condition of tangible personal property . . ."[7]

Baker filed her original petition on January 21, 2014, alleging that the deputy overtightened her handcuffs, "violently pull[ed] down on the hand cuffs and [struck] [Baker] in the back with his knees[,]" and "slammed [Baker] to the ground and verbally threatened that not only would he kill her, but nobody would care."[8] She stated, "[a]fter arriving at the police station, the violence continued. Still using the handcuffs for leverage, the deputy slammed [Baker]

---

[4]    C.R. at 70.

[5]    C.R. at 70.

[6]    C.R. at 70.

[7]    C.R. at 71.

[8]    C.R. at 4.

repeatedly into several pieces of furniture at and/or around the booking area of the police station including a concrete bench."[9]

In response to interrogatories, Baker stated, "the police officer violently closed the cuffs and continued to squeeze them until my left wrist was fractured. . . . He continued to twist the cuffs once they were applied and lifted my body weight using the cuffs as well."[10] Baker said, while in the booking room, "I was slammed on the concrete benches, still using the handcuffs, head first causing my teeth to basically shatter. It is my belief that other objects such as tables could have been used to cause my injuries as well. At this time, I had already been knocked unconscious previously."[11]

She further explained both incidents in her deposition. Baker testified the deputy "twisted" her hands, "jerked" her around, "slammed" her to the ground, and continued to "hit" her head and "jerk" her in the booking room:

> I remember [the arresting deputy] twisting my hands behind my back and jerking me around; and he would put his knee behind my knee so I would fall or, you know, trip or whatever. And I kept telling him that he was breaking my wrist. Then I remember getting—I don't know if I was slammed to the ground, to the car or curb; and that's when I felt my teeth fissure. . . . I remember being in the back of the car, and I was really in shock.

---

[9]     C.R. at 4.

[10]    C.R. at 80, 93.

[11]    C.R. at 81, 95, 96.

And I was sitting there [in the police car] and I was thinking to myself, "Well, you know, this guy is going to fricking kill me," you know. And I was thinking, "Wow, Stephanie." And I was just terrified, . . . [A]nd then I went to the jail, and he booked me in there. And then he did the same thing there, and I hit my head on—I think—like I said, I'm pretty sure I hit my head on the cement benches. It was not I hit my head. He hit my head, you know, when he jerked me.[12]

When pushed on whether the deputy intentionally threw her to the ground, Baker proclaimed, "He intentionally threw me to the ground[,]" and "he was very angry and aggressive and hateful. So, yeah, I'm sure he meant to do it."[13]

Harris County filed a plea to the jurisdiction on December 22, 2014, arguing that the Tort Claims Act retains immunity for Baker's intentional-tort claims.[14] The plea argued that the district court lacked subject-matter jurisdiction over Baker's claims and prayed that the district court would grant the plea and dismiss the case.[15]

Baker responded to Harris County's plea on January 2, 2015, arguing her injuries were caused by the deputy's use of handcuffs, the booking room, and "furniture in the booking room."[16] Her response relied on a Significant Event

---

[12] C.R. at 30, 34–35.

[13] C.R. at 38, 40.

[14] C.R. at 12–20.

[15] C.R. at 14–19.

[16] C.R. at 59–61.

Bulletin completed by jail staff, which Baker claims allegedly "state[d] that the fall sustained by [Baker] [in the jail] which caused her injuries ar[o]se from the officer raising his hand without intent to make contact, but merely to gain some distance" and "proves that the injuries sustained were from the negligent use of the restraints and placement of the booking room while [Baker] was intoxicated."[17] The Significant Event Bulletin, however, stated that the deputy "was in fear that [Baker] might assault him . . . [and] raised his arm in an attempt to stop her and to maintain distance from himself":

> Deputy Valdez attempted to explain to [Baker] that she would be taken across the street momentarily. She cursed him again and stood back up and walked towards him. Since her handcuffs at that time were still in front of her[,] Deputy Valdez was in fear that she might assault him. Deputy Valdez raised his arm in an attempt to stop her and to maintain distance from him. Due to her intoxicated state she lost balance and fell down on her left side between the concrete benches. . . . Baker became combative at that time and attempted to kick [Deputy Valdez] in his leg but Deputy Valdez was able to grab her leg and she was unsuccessful. Deputy Waller attempted to stand her up to sit her back down on the bench and she attempted to bite Deputy Waller. . . . Baker was successfully sat down on the bench but continued to curse Deputy Valdez and Deputy Waller.[18]

---

[17]    C.R. at 60.

[18]    C.R. at 63.

Three days later, Baker amended her petition.[19] In it, she raised the same claims, but focused on negligent action by deleting words from her original petition indicating an intentional tort, such as "violently slammed" and "slammed repeatedly."[20]

On January 16, 2015, Harris County supplemented its plea to the jurisdiction. Harris County argued that Baker's discovery responses and deposition testimony showed that her claims were for intentional torts despite couching her claims in terms of negligence.[21] On the same day, Harris County also answered Baker's first amended petition.[22] Harris County argued that the Tort Claims Act does not waive immunity for intentional torts.[23] On October 14, 2015, the district court denied Harris County's plea and on October 28, 2015, Harris County appealed.[24]

---

[19]     *See generally* C.R. at 69–76.

[20]     *Compare* C.R. at 70 *with* C.R. at 4.

[21]     C.R. at 77–78, 79–84.

[22]     *See generally* C.R. at 108–10.

[23]     C.R. at 109.

[24]     C.R. at 112.

Baker alleges she was injured when a HCSO deputy used handcuffs to lawfully arrest her. Baker also alleges she was injured in the jail booking room when the deputy used handcuffs, the booking room, or booking-room contents. But the Tort Claims Act does not waive immunity for either claim, and the district court lacked jurisdiction over them.

The Tort Claims Act expressly retains sovereign immunity for claims arising out of an intentional tort, such as an arrest. Baker's allegations of injury due to the deputy's use of handcuffs during her arrest states a claim arising out of a battery: the arrest. Harris County submitted evidence to support its motion—Baker's interrogatory responses and deposition testimony. The evidence shows that her claims arise out of an intentional tort. Thus, the district court lacked subject-matter jurisdiction over Baker's claim of arrest-related injury because the Tort Claims Act expressly retains immunity for claims arising out of an intentional tort.

Baker's claims of injury in the booking room also arise from an intentional tort. Harris County submitted supporting evidence—Baker's interrogatory responses and deposition testimony—in which Baker says the deputy was angry and intentionally caused her injury. Further, an official HCSO report shows that Baker was cursing the officers and repeatedly

approached them despite orders to remain seated. According to the report, the deputy only used force in self-defense to prevent Baker from approaching him in a threatening manner.

But even if the booking-room incident may have resulted from negligence, Baker has not—and cannot—show that her injuries were caused by a use of property. At best, the evidence shows Baker's cursing and approaching the deputy prompted the deputy to use some force to maintain distance from her. This self-defense caused Baker's alleged injuries; the handcuffs, booking room, and booking-room contents only furnished the condition making injury possible. Thus, Baker's booking-room injuries either arose out of an intentional tort or were not caused by a use of property. Either way, the district court lacked jurisdiction over the booking-room claims, just as it lacked jurisdiction over Baker's arrest claims.

In addition, Baker had ample opportunity to amend her pleadings after Harris County filed its plea and before the district court ruled. Yet she still failed to state a claim over which immunity is waived. Baker should not be allowed another attempt to cure her pleadings. Thus, Harris County respectfully asks the Court to reverse the district court order denying Harris County's plea to the jurisdiction, to render judgment in favor of Harris County, and to dismiss Baker's claims.

**ARGUMENT**

## I. The standard of review is *de novo*.

An appellate court reviews *de novo* a district court order denying a plea to the jurisdiction.[25] A plea may challenge a court's jurisdiction by attacking the pleadings or the existence of jurisdictional facts.[26] When a party submits evidence in support of its plea to the jurisdiction, as Harris County did, the challenge is to the existence of jurisdictional facts.[27]

In reviewing a challenge to the existence of jurisdictional facts, an appellate court—like the district court below—considers relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issue.[28] All evidence favorable to the nonmovant is considered true.[29] If the evidence raises a fact question about the jurisdictional issue, the plea should be denied. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea should be granted.[30]

---

[25] *E.g.*, *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

[26] *Id.* at 226–27.

[27] *Id.* at 227–28.

[28] *Id.* at 227.

[29] *Id.* at 228.

[30] *Id.* at 227–28.

**II.** **Baker's alleged injury from the use of handcuffs during her arrest arises out of battery, an intentional tort for which the Tort Claims Act expressly retains governmental immunity.**

Baker's only claim against Harris County is a *respondeat superior* theory of liability for the actions of a HCSO deputy during Baker's arrest and booking into the Harris County jail.[31] Yet she has not stated a claim over which Harris County's governmental immunity is waived.

Governmental or sovereign immunity deprives a court of subject-matter jurisdiction.[32] Governmental immunity may be waived by the legislature's clear and unambiguous language, such as the language in the Tort Claims Act's (TTCA) limited waiver provision.[33] But the TTCA expressly "does not apply to a claim . . . arising out of assault, battery, . . . or any other intentional tort[.]"[34]

In *City of Watauga v. Gordon*, the Texas Supreme Court recently held that a claim against a municipality for injuries accidentally caused by a police officer's use of handcuffs during a lawful arrest is a claim for battery alone, and thus sovereign immunity is expressly retained.[35] In that case, Gordon was

---

[31]    C.R. at 72.

[32]    *E.g.*, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–95 (Tex. 2012).

[33]    Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2015).

[34]    Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2015).

[35]    *City of Watauga v. Gordon*, 434 S.W.3d 586, 588 (Tex. 2014). *See also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2).

arrested on suspicion of drunk driving and arrested without incident. He claimed to have informed officers—both at the arrest site and later at the police station—that his handcuffs were too tight.[36] The *Gordon* Court determined the claim was for battery, relying on the penal-code definition of "assault":

- intentionally, knowingly, or recklessly causing bodily injury;
- intentionally or knowingly threatening another with imminent bodily injury; or
- intentionally or knowingly causing offensive physical contact with another.[37]

This definition includes common-law concepts of both assault and battery and has been applied to civil claims of battery and assault.[38] Thus, the Court concluded that a lawful arrest is a battery as a matter of law:

> The actions of a police officer in making an arrest necessarily involve a battery, although the conduct may not be actionable because of privilege. The officer is privileged to use reasonable force. But a police officer's mistaken or accidental use of more force than reasonably necessary to make an arrest still "arises out of" the battery claim. "As the saying goes, there is no such thing as a negligent battery, since battery is defined to require an intentional touching without consent not a negligent one."[39]

---

[36]     *Gordon*, 434 S.W.3d at 588.

[37]     *Id.* at 590 (citing Tex. Penal Code Ann. § 22.01(a) (West 2015)).

[38]     *Gordon*, 434 S.W.3d at 589–90.

[39]     *Id.* at 594 (citations omitted).

Further, the TTCA bars intentional-tort claims even if they are framed as negligence.[40] As this Court has stated, "A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence."[41]

Although Baker's amended petition framed her claims as negligence, Baker's arrest-related claim of injury arises out of the intentional tort of battery. In her amended petition, Baker states that "the deputy placed [Baker] in handcuffs in a negligent manner where the hand cuffs were negligently placed around [Baker's] wrist. The deputy began to pull down on the hand cuffs. This caused severe injuries to both Plaintiff's back and wrists."[42] But this is exactly the kind of battery the Supreme Court found not actionable under the TTCA in *Gordon*: even if Baker's injuries were caused by a negligent overtightening of the handcuffs, her claim arose from her arrest, which is a battery. Because *Gordon* controls, Baker's claim is barred under the TTCA as a matter of law.

The evidence supporting Harris County's plea confirms that Baker's claim is for an intentional tort. In her deposition, Baker testified that, despite

---

[40] *Pineda v. City of Houston*, 175 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[41] *Id.*

[42] C.R. at 70.

her protests, the deputy twisted her hands, jerked her around, caused her to fall, and slammed her to the ground:

> I remember him twisting my hands behind my back and jerking me around; and he would put his knee behind my knee so I would fall or, you know, trip or whatever. And I kept telling him that he was breaking my wrist. Then I remember getting—I don't know if I was slammed to the ground, to the car or curb; and that's when I felt my teeth fissure.
>
> .  .  .
>
> [The deputy] squeezed [the handcuffs]. He was—he was just really pissed off at me for whatever reason. He was just very pissed off and he was being very hard and he squeezed. I told him—this is not the first time I had handcuffs on. . . . He was just squeezing and squeezing and twisting. I said, "Man, you're breaking my wrist." So, it was violent and, you know, intense.[43]

Baker declared the deputy "absolutely" intentionally squeezed the handcuffs.[44]

And her interrogatory responses likewise stated the deputy "violently" clasped the handcuffs, pulled them down, and "threw" her around while he "struck" her "for no reason at all":

> [The deputy] violently closed the cuffs and continued to squeeze them until my left wrist was fractured. . . . He continued to twist the cuffs once they were applied and lifted my body weight using the cuffs as well.
>
> .  .  .
>
> [A]t no point was I resisting arrest. The officer would violently pull the cuffs down and throw me around while he struck me in the back causing injury for no reason at all and certainly a

---

[43]    C.R. at 34, 36. *See also* C.R. at 11, 17 (Harris County's plea using Baker's deposition as supporting evidence); C.R. at 79, 83 (Harris County's supplemental plea incorporating its plea and using Baker's deposition as supporting evidence).

[44]    C.R. at 36.

reasonable officer in his capacity would not have behaved in this manner.

.  .  .

[T]he cuffs were used to lift my body weight off of the ground and then I was slammed violently to the ground causing me to lose conscious [sic].[45]

Baker's own words show an intentional tort, even if contradicted by the language in her amended petition. Thus, no legal or factual issue exists as to whether Baker's claim arises out of an intentional tort. Viewed in the light most favorable to Baker, the evidence shows that her claim arises out of the battery inherent in a lawful arrest. Even if the deputy negligently caused her injuries, Baker's claim is barred because it arises out of an intentional tort, for which governmental immunity is expressly preserved. The district court, therefore, lacked subject-matter jurisdiction over Baker's arrest-related claims, and this Court should reverse the order denying Harris County's plea to the jurisdiction on Baker's arrest-related claim, render judgment in favor of Harris County, and dismiss the claim.

---

[45]    C.R. at 93, 94.

**III. The Tort Claims Act does not waive governmental immunity over Baker's claim of injury from the use of (1) handcuffs while in the booking room, (2) the booking room, or (3) the booking-room contents.**

**A. Baker's booking-room claim arises out of battery, for which the Tort Claims Act retains governmental immunity.**

The evidence supporting Harris County's plea and Baker's response shows that the incident in the booking room, like the arrest, arose out of an intentional tort.[46] Despite careful drafting to eliminate any words indicating an intentional act, Baker's amended petition shows she approached the deputy after being ordered to sit down and caused the deputy to use self-defense against Baker's advances:

> While in the booking room . . . , [Baker] was left restrained and placed on a bench. Employees of the Harris County Sheriff's Department were aware that [Baker] was intoxicated but left the restraints on her hands and failed to fully restrain her so that she could not stand up. After being told to sit down once, Plaintiff stood up and approached an officer. The officer put his hand up to form distance between himself and [Baker]. [Baker] then fell and received injuries due to property located in the booking room and/or the restraints that were being improperly used.[47]

Baker's amended petition alone shows the deputy intended or knew he might cause injury or offensive physical contact by defending himself against Baker's advances. And Baker's deposition testimony and interrogatory

---

[46]    *See supra* notes 34, 39–41, at 12–14.

[47]    C.R. at 70.

- 17 -

responses confirm her claim arose out of an intentional tort. At her deposition, Baker testified the deputy continued to "hit," "jerk," and "throw" her:

> [A]nd then I went to the jail, and he booked me in there. And then he did the same thing there, and I hit my head on—I think—like I said, I'm pretty sure I hit my head on the cement benches. It was not I hit my head. He hit my head, you know, when he jerked me.
>
> .  .  .
>
> I remember hitting my head and him being in control of my body. You know, when he threw me down on the ground and I hit my head to the ground, yeah, he had control; and I had no way to get up and no way to block my fall.
>
> .  .  .
>
> Yes, he was very angry and aggressive and hateful. So, yeah, I'm sure he meant to do it. . . . Yes, sir[,] [the officer intended it to happen].[48]

In response to interrogatories, Baker said, "I was slammed on the concrete benches, still using the handcuffs, head first causing my teeth to basically shatter. It is my belief that other objects such as tables could have been used to cause my injuries as well."[49] Baker's own words affirm that her claims are for intentional torts. Despite her artfully pled amended petition removing any terms indicating an intentional act, Baker's testimony reveals that the deputy was angry with her and used intentional force.

The deputy's side of the story reinforces Baker's testimony and contradicts her claims of negligence. In a Significant Event Bulletin, an official

---

[48]    C.R. at 35, 38, 40.

[49]    C.R. at 93. *See also* C.R. at 94.

report of the incident, the deputy explained that on the date of her arrest and booking, Baker was intoxicated and had trouble standing. She complained about having to change her feminine pad and became angry with and cursed the officers when they did not immediately give her access to a restroom. She repeatedly stood up and approached officers after being told to sit down. Baker again approached the deputy in a threatening manner and the deputy defensively distanced himself from her:

> [Baker] cursed [the deputy] again and stood back up and walked towards him. Since her handcuffs at that time were still in front of her Deputy Valdez was in fear that she might assault him. Deputy Valdez raised his arm in an attempt to stop her and to maintain distance from him. Due to her intoxicated state she lost balance and fell down on her left side between the concrete benches. Defendant Baker became combative at that time and attempted to kick him in his leg but Deputy Valdez was able to grab her leg and she was unsuccessful. Deputy Waller attempted to stand her up to sit her back down on the bench and she attempted to bite Deputy Waller. Defendant Baker was successfully sat down on the bench but continued to curse Deputy Valdez and Deputy Waller.[50]

The reporting deputy's supervising lieutenant determined "there was no use of force issues or violation of policy or law."[51]

Thus, the evidence shows that Baker's booking-room claim arose out of an intentional tort. From the deputy's perspective, he used force to defend

---

[50]    C.R. at 63.

[51]    C.R. at 63.

against unpermitted, disruptive advances. Such defensive actions are intentional. From Baker's perspective, the deputy "intended" to hurt her. Because immunity deprives a court of subject-matter jurisdiction, and because Harris County retains immunity for Baker's intentional-tort claims, the district court lacks subject-matter jurisdiction over Baker's booking-room claims.

### B. The handcuffs, booking room, and booking-room contents did no more than furnish the condition that made Baker's injury possible.

Assuming Baker's booking-room claims did not arise out of an intentional tort, the TTCA does not waive immunity over the claims because Baker has not shown her injury was caused by a use of property. Lack of jurisdiction may be raised at any time including on appeal.[52] Section 101.021(2) of the Act waives immunity for personal injury negligently caused by a governmental entity's use of tangible property.[53] The personal injury must have been proximately caused by the condition or use of property.[54] "Property does

---

[52]     *Rusk State Hosp.*, 392 S.W.3d at 94–95.

[53]     Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2015).

[54]     *Dallas Cnty. MHMR v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). *See also City of Houston v. Davis*, 294 S.W.3d 609, 612 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

not cause injury if it does no more than furnish the condition that makes the injury possible."[55]

Contrary to Supreme Court and this Court's precedent, the Tenth and Thirteenth Courts of Appeals have found that a booking room or jail cell caused injury because the room where the injury occurred was "used." In *Vela v. City of McAllen*, the Thirteenth Court of Appeals found a booking room was "used" because the booking officer negligently placed a stool in the room and caused Vela injury.[56] In *City of Waco v. Hester*, the Tenth Court of Appeals determined that a room in which Hester was assaulted and a television set on which the guards monitored the room were "used" to cause Hester's injuries.[57]

But this Court and several others have declined to follow *Vela* and *Hester* or have disagreed with those opinions' reasoning.[58] In declining to follow the reasoning in *Hester*, this Court determined that the prison door and room in

---

[55] *Bossley*, 968 S.W.2d at 343 (citations omitted).

[56] *Vela v. City of McAllen*, 894 S.W.2d 836, 840 (Tex. App.—Corpus Christi 1995, no pet.).

[57] *City of Waco v. Hester*, 805 S.W.2d 807, 814–15 (Tex. App.—Waco 1990, writ denied).

[58] *E.g.*, *Scott v. Prairie View A&M Univ.*, 7 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Nunez v. City of Sansom Park*, 197 S.W.3d 837, 842–43 (Tex. App.—Fort Worth 2006, no pet.) (declining to follow *Vela*, *Hester*, and another Corpus Christi Court of Appeals decision, *Martinez v. City of Brownsville*, No. 13-00-425-CV, 2001 WL 1002399 (Tex. App.—Corpus Christi Aug. 31, 2001, pet. denied)).

*Hester* were not defective under a premises defect theory, which is the proper analysis to determine if immunity is waived for a claim of injury from the use of real property.[59] And the door and room "were too attenuated from the actual injury to be considered the proximate cause of Hester's injury."[60]

At various times, Baker ambiguously claimed that the handcuffs, the booking room, or the property inside the booking room caused her injuries. To the extent she alleges the booking room caused her injuries, Baker never alleged or argued that her injuries were caused by a premises defect.

To the extent she alleges injuries resulting from the handcuffs, Baker did not show that they caused her injuries. Indeed, Baker testified she injured her head and teeth in the booking room, not any part of her body contacting the handcuffs, like her wrists.[61] Baker just happened to be handcuffed when injured. Nor has Baker shown her injuries were caused by the "use" of the handcuffs. Contrary to her response that she was slammed on the benches "still using the handcuffs," Baker's amended petition and the Significant Event Bulletin state her injuries occurred as a result of the deputy's self-defense, not

---

[59]      *Scott*, 7 S.W.3d at 720.

[60]      *Id.*

[61]      C.R. at 35, 95, 96.

the deputy's use of the handcuffs.[62] Thus, the handcuffs merely furnished a condition that may have made her injuries possible.

Finally, to the extent Baker claims property in the booking room caused her injuries, governmental immunity is not waived. Baker's most specific allegation is that she was injured by a concrete bench. But if the bench is real property, i.e., a fixture attached to the room, then Baker has failed to show the benches were defective and the defect caused her injuries. If the bench is personal property, Baker has failed to allege that it did any more than furnish the condition making her injury possible. Baker has not shown that the deputy "used" the bench to cause her injuries.

As this Court has determined, jail officials have no duty to warn inmates that barriers or deterrents may cause them harm.[63] Jails utilize concrete benches and other stationary, secured furniture so inmates cannot use it to disrupt. Such furniture is necessary for the humane treatment of inmates. If Harris County has a duty to warn inmates that injury might result from the concrete benches in the booking room, then Harris County would be subject to substantial liability beyond the legislature's intent.

---

[62]     *Compare* C.R. at 95 *with* C.R. at 63, 70.

[63]     *Retzlaff v. Texas Dep't of Criminal Justice*, 135 S.W.3d 731, 742 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

All of Baker's claims arise out of intentional torts. But even if her booking-room injuries may have resulted from negligence, Baker has failed to show that her injuries were caused by a negligent use of property. Thus, the district court lacked subject-matter jurisdiction over Baker's booking-room claims. This Court should, therefore, reverse the order, render judgment in favor of Harris County, and dismiss Baker's claims.

## IV. Baker amended her pleadings after Harris County filed its plea to the jurisdiction but before the district court ruled on it, so she should not be allowed another attempt to cure.

Baker should not be given an opportunity to attempt to cure any defects in her pleadings. If a plaintiff had an opportunity to replead after a defendant files a plea to the jurisdiction, then the plaintiff should not be allowed another attempt to cure.[64]

Baker amended her petition shortly after Harris County filed its plea and more than nine months before the district court ruled on it.[65] As discussed, Baker failed to plead claims for which the legislature has waived Harris County's immunity. And because Harris County's plea challenged the existence of jurisdictional facts, Baker could have—but did not—offer

---

[64] *Miranda*, 133 S.W.3d at 231. *See also Texas Dep't of Criminal Justice—Cmty. Justice Assistance Div. v. Campos*, 384 S.W.3d 810, 815–16 (Tex. 2012) (citing *Rusk State Hosp.*, 392 S.W.3d at 96, 100).

[65] C.R. at 10, 69, 112.

evidence to show the district court had jurisdiction over her claims. Baker had ample opportunity to amend her pleadings and conduct discovery, yet she failed to show a waiver of Harris County's governmental immunity. Therefore, this Court should not allow Baker any further attempts to cure her pleadings.

## CONCLUSION & PRAYER

Baker's arrest and booking-room claims arose out of an intentional tort for which the Tort Claims Act expressly retains governmental immunity. And Baker's booking-room injuries were not caused by a negligent use of property. Because Harris County retains immunity over Baker's claims, the district court lacked subject-matter jurisdiction. Therefore, Harris County respectfully asks the Court to reverse the district court order denying Harris County's plea to the jurisdiction, to render judgment in favor of Harris County, and to dismiss Baker's claims.

Respectfully submitted,

VINCE RYAN
Harris County Attorney

/s/ Keith A. Toler
KEITH A. TOLER
Assistant County Attorney
State Bar No. 24088541

HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5265
Fax: (713) 755-8924
Email: Keith.Toler@cao.hctx.net

*Counsel for Appellant*
*Harris County, Texas*

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 5,027 words, as determined by the computer software's word-count function, excluding the portions of the document exempted by Texas Rule of Appellate Procedure 9.4(i)(1). I further certify that the form of this brief meets the requirements of Texas Rule of Appellate Procedure 9.4.

/s/ Keith A. Toler
KEITH A. TOLER
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I certify that on December 16, 2015, I served a true and correct copy of this brief on L. James Krell and Ron S. Rainey, counsel for Appellee, by electronic transmission via the electronic filing manager or by email.

L. James Krell
Ron S. Rainey
TRITICO RAINEY, PLLC
1523 Yale St.
Houston, Texas 77008
jkrell@triticorainey.com
rrainey@triticorainey.com

*Counsel for Appellee*

/s/ Keith A. Toler
KEITH A. TOLER
*Counsel for Appellant*

No. 01-15-00930-CV
_____

**IN THE FIRST COURT OF APPEALS**
**HOUSTON, TEXAS**
_____

HARRIS COUNTY, TEXAS,
                                        *Appellant*,

v.

STEPHANIE JO BAKER,
                                        *Appellee*.
_____

On Appeal from the 295th District Court
Harris County, Texas, Cause No. 2014-02549

---

## APPELLANT'S APPENDIX
_____

### List of Documents

1) District Court Order (Oct. 14, 2015)
   C.R. at 112 ...................................................................................Tab 1

2) Text of Texas Civil Practice & Remedies Code § 101.021...................Tab 2

3) Text of Texas Civil Practice & Remedies Code § 101.057...................Tab 3

4) *City of Watauga v. Gordon*, 434 S.W.3d 586 (Tex. 2014)....................Tab 4

# TAB #1

**FILED**
Chris Daniel
District Clerk

OCT 1 4 2015



CAUSE NO. 2014-02549

| | | |
|---|---|---|
| **STEFANIE JO BAKER,**<br>*Plaintiff* | §<br>§<br>§ | **IN THE DISTRICT COURT OF** |
| **VS.** | §<br>§<br>§ | |
| **HARRIS COUNTY, TEXAS,**<br>*Defendant* | §<br>§<br>§ | **HARRIS COUNTY, TEXAS**<br><br>**295th JUDICIAL DISTRICT** |

## ORDER

Came on to be heard Defendant Harris County, Texas' Plea to the Jurisdiction. This Order memorializes the following previous ruling of the Court:

Upon consideration, the Court finds that Defendant Harris County, Texas' Plea to the Jurisdiction should be DENIED. It is, therefore, ORDERED that Defendant Harris County, Texas' Plea to the Jurisdiction is DENIED.

Signed this 14th day of October, 2015.

OCT 1 4 2015

_____
Judge Presiding

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

# TAB #2

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      Chapter 101. Tort Claims (Refs & Annos)
        Subchapter B. Tort Liability of Governmental Units (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 101.021

§ 101.021. Governmental Liability

Currentness

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (1428)

V. T. C. A., Civil Practice & Remedies Code § 101.021, TX CIV PRAC & REM § 101.021
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB #3

> Vernon's Texas Statutes and Codes Annotated
>   Civil Practice and Remedies Code (Refs & Annos)
>     Title 5. Governmental Liability
>       Chapter 101. Tort Claims (Refs & Annos)
>         Subchapter C. Exclusions and Exceptions

V.T.C.A., Civil Practice & Remedies Code § 101.057

§ 101.057. Civil Disobedience and Certain Intentional Torts

Currentness

This chapter does not apply to a claim:

(1) based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or

(2) arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (163)

V. T. C. A., Civil Practice & Remedies Code § 101.057, TX CIV PRAC & REM § 101.057
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB #4

434 S.W.3d 586
Supreme Court of Texas.

The CITY OF WATAUGA, Petitioner,

v.

Russell GORDON, Respondent.

No. 13–0012. | Argued Dec.
4, 2013. | Decided June 6, 2014.

**Synopsis**

**Background:** Arrestee brought action against city based on police officer's use of handcuffs during arrest. City entered plea to the jurisdiction. The 17th District Court, Tarrant County, Melody Wilkinson, J., denied city's plea, and city appealed. The Court of Appeals, 389 S.W.3d 604, affirmed. City petitioned for review.

**[Holding:]** The Supreme Court, Devine, J., held that arrestee's action was an action for battery rather than one for negligence, and thus city had not waived governmental immunity to action.

Reversed and rendered.

West Headnotes (10)

**[1]**   **Appeal and Error**
   👈 Necessity of final determination

As a general rule, appeals may be taken only from final judgments.

1 Cases that cite this headnote

**[2]**   **Courts**
   👈 Review by or certificate to Supreme Court by Court of Civil Appeals of questions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court

Decision of Court of Appeals below, affirming denial of city's plea to jurisdiction made in response to arrestee's action against city arising

out of use of handcuffs during arrest, conflicted with other decisions, and therefore Supreme Court had jurisdiction over city's interlocutory appeal of denial of plea, where several prior Court of Appeals decisions, unlike decision in instant case, applied the intentional-tort exception to bar personal-injury claims arising from a police officer's use of tangible property during arrest. V.T.C.A., Government Code §§ 22.001(e), 22.225(c, e).

1 Cases that cite this headnote

**[3]**   **Municipal Corporations**
   👈 Nature and grounds of liability

A city, as a political subdivision of the state, is protected from tort claims by governmental immunity.

1 Cases that cite this headnote

**[4]**   **Municipal Corporations**
   👈 Nature and grounds of liability

Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law.

Cases that cite this headnote

**[5]**   **Municipal Corporations**
   👈 Capacity to sue or be sued in general
   **States**
   👈 Liability and Consent of State to Be Sued in General

Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts.

Cases that cite this headnote

**[6]**   **Municipal Corporations**
   👈 Nature and grounds of liability of municipality as proprietor

To sue a governmental unit under the Texas Tort Claim Act's limited waiver, a plaintiff may allege

an injury caused by negligently using tangible personal property, but to be viable, the claim cannot arise out of an intentional tort. V.T.C.A., Civil Practice & Remedies Code §§ 101.021(2), 101.057.

3 Cases that cite this headnote

**[7] Municipal Corporations**
   Police and fire

Arrestee's action against city, asserting injury from police officer's use of allegedly overly-tight handcuffs during arrest, was an action for battery rather than one for negligence, and thus city had not waived governmental immunity to action, despite argument that arrestee's compliance during arrest constituted consent to what otherwise would have been a battery; a specific intent to injure was not an essential element of a battery, and gravamen of complaint was that officer used excessive force. V.T.C.A., Civil Practice & Remedies Code § 101.057(2).

5 Cases that cite this headnote

**[8] Assault and Battery**
   Intent and malice

Although a specific intent to inflict injury is without question an intentional tort, a specific intent to injure is not an essential element of a battery. Restatement (Second) of Torts § 16.

Cases that cite this headnote

**[9] Assault and Battery**
   Nature and Elements of Assault and Battery
**Assault and Battery**
   Intent and malice

A battery does not require a physical injury, and thus it follows that an intentional physical injury is also not required; in fact, even a harmful or offensive contact that is intended to help or please the plaintiff can be actionable as a battery. Restatement (Second) of Torts § 16.

3 Cases that cite this headnote

**[10] Assault and Battery**
   Intent and malice

Liability in battery extends to harmful bodily contacts even though only offensive contacts were intended.

1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*587** Ramon G. Viada, III, Viada & Strayer, Woodlands, TX, for Amicus Curiae.

Joe C. Tooley, Law Office of Joe C. Tooley, Rockwall, TX, for Petitioner.

Kenneth Peter Trosclair, Wilson, Trosclair & Lovins, PLLC, Dallas, TX, for Respondent.

**Opinion**

Justice DEVINE delivered the opinion of the Court.

The Texas Tort Claims Act waives governmental immunity for, among other things, personal injuries allegedly caused by the negligent use of property. TEX. CIV. PRAC. & REM.CODE § 101.021. The Act does not waive immunity when the claim arises out of an intentional tort, however. *Id.* § 101.057(2). The question in this interlocutory appeal is whether an arrestee's lawsuit against a city for injuries, accidentally **\*588** caused by a police officer's use of handcuffs, states a battery or negligence claim. The court of appeals concluded that the underlying claim was for negligence and therefore affirmed the trial court's order, denying the city's governmental-immunity plea. 389 S.W.3d 604 (Tex.App.-Fort Worth 2012). We conclude, however, that the underlying claim is for battery. Because the city's governmental immunity has not been waived for this intentional tort, we reverse the court of appeals' judgment and dismiss the case.

### I. Background

City of Watauga police officers stopped Russell Gordon on suspicion of drunk driving and asked him to submit to a sobriety test. Gordon declined. He was then arrested without resistance. Gordon was handcuffed at the scene and again

later when transported from a nearby police station to the city jail. Gordon asserts that on both occasions he informed the officers that his handcuffs were too tight but that his complaints were ignored.

Gordon subsequently sued the City for injuries to his wrists allegedly caused by the officers' negligent use of property—the handcuffs. The City responded with a plea to the jurisdiction, asserting immunity from suit under the intentional-tort exception to the Tort Claims Act's sovereign-immunity waiver. TEX. CIV. PRAC. & REM.CODE § 101.057(2). The trial court denied the City's plea. The City appealed. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8) (permitting interlocutory appeal of an order granting or denying a plea to the jurisdiction by a governmental unit). The court of appeals affirmed, concluding that Gordon's pleadings asserted a negligence claim and that the City's plea and jurisdictional evidence did not show an exception to the applicable immunity waiver. 389 S.W.3d at 607–08.

## II. Jurisdiction

 **[1]**    **[2]**    Because this is an interlocutory appeal, we begin with the issue of our own jurisdiction. As a general rule, appeals may be taken only from final judgments. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001). Exceptions to this general rule are provided by statutes that specifically authorize interlocutory appeals of particular orders. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE § 51.014 (listing a number of interlocutory orders that may be appealed). Another general rule provides for finality of these appeals in the courts of appeals. TEX. GOV'T CODE § 22.225(b)(3) (providing generally that petition for review is not allowed to the supreme court in an interlocutory appeal). But again, exceptions exist. One such exception provides that the supreme court is not deprived of jurisdiction to consider an interlocutory appeal when a justice dissents in the court of appeals or when the court of appeals' decision conflicts with a prior decision. *Id.* § 22.225(c).

The City here asserts conflicts jurisdiction, arguing that the decision in this case conflicts with several prior decisions that, unlike this case, apply the intentional-tort exception to bar personal-injury claims arising from a police officer's use of tangible property during an arrest. *See, e.g., Harris Cnty. v. Cabazos,* 177 S.W.3d 105 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding immunity not waived for officer's intentional discharge of pistol); *City of Garland v. Rivera,*

146 S.W.3d 334 (Tex.App.-Dallas 2004, no pet.) (holding immunity not waived for intentional use of pepper spray, handcuffs, and police service dog); *Morgan v. City of Alvin,* 175 S.W.3d 408 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding immunity not waived for officer's physical assault of arrestee); **\*589** *City of Laredo v. Nuno,* 94 S.W.3d 786 (Tex.App.-San Antonio 2002, no pet.) (holding immunity not waived for intentional use of handcuffs and excessive force in arrest). A conflict in decisions is defined as an "inconsistency ... that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.001(e); § 22.225(e). We agree that such a conflict is presented here and turn to the issue of the City's immunity.

## III. The Underlying Claim: Negligence or Battery

 **[3]**    **[4]**    **[5]**    The City of Watauga, as a political subdivision of the State, is protected from tort claims by governmental immunity. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998). Governmental immunity [1] generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law. *Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994). The Texas Tort Claims Act provides a limited waiver of this immunity and is asserted as the basis for the underlying suit here.

 **[6]**    In pertinent part, the Tort Claims Act waives immunity for injuries caused by the negligent use of tangible property, stating:

> A governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE § 101.021(2). This limited waiver does not apply to intentional torts, however. *Id.* § 101.057. Thus, to sue a governmental unit under the Act's limited waiver, a plaintiff may allege an injury caused by negligently using tangible personal property, *York,* 871 S.W.2d at 178 n. 5, but to be viable, the claim cannot arise

out of an intentional tort, *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex.2001).

The City maintains that its immunity has not been waived because Gordon's underlying claim arises from an intentional tort, a battery, also sometimes referred to as an assault. Texas courts have recognized private causes of action for both assault and battery for well over a century. *See Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.,* 343 S.W.3d 112, 115–116 (Tex.2011) (citing *Sargent v. Carnes,* 84 Tex. 156, 19 S.W. 378, 378 (1892)). These two intentional torts are related, but conceptually distinct. 4 J. HADLEY EDGAR, JR., & JAMES B. SALES, TEXAS TORTS & REMEDIES § 50.01[1] at 50–3 (2013). An assault occurs when a person is in apprehension of imminent bodily contact, whereas a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person. *See generally,* 1 DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS §§ 33–40 (2d ed.2012) (hereafter "THE LAW OF TORTS").

Today, the Texas Penal Code combines common-law concepts of assault and battery under its definition of "assault." TEX. PEN.CODE § 22.01(a). Reliance on the criminal-assault statute has led several Texas civil courts to meld common-law concepts of assault and battery under the rubric of assault. [2] This statute provides **\*590** that a person commits an assault if the person either:

(1) intentionally, knowingly, or recklessly causes bodily injury to another ...;

(2) intentionally or knowingly threatens another with imminent bodily injury ...; or

(3) intentionally or knowingly causes physical contact with another when he or she knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PEN.CODE § 22.01(a).

The statute's second alternative definition mirrors the traditional notion of common-law assault, while the first and last alternatives correspond to separate forms of common-law battery. The Second Restatement of Torts similarly identifies two forms of battery: one form that results in harmful bodily contact and another that results in offensive bodily contact. RESTATEMENT (SECOND) OF TORTS §§ 13, 18 (1965). Because its police officers did not intend any harmful bodily

contact when they arrested Gordon, the City relies on the latter form of battery, maintaining that the arrest constituted an offensive bodily contact.

In *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967), we recognized this type of battery. In that case, the manager of a motel restaurant snatched a plate from the hands of a black man as he stood in a buffet line, shouting that he would not be served. *Fisher,* 424 S.W.2d at 628–29. We held the manager's conduct to be actionable as a battery. *Id.* at 630. Relying on the Restatement, we noted that it was the offensive nature of the contact, not its extent, that made the contact actionable: "Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting." *Id.* (citing RESTATEMENT (SECOND) OF TORTSS § 18); *see also Waffle House,* 313 S.W.3d at 802–03 (recognizing continued viability of offensive-contact batteries).

## A. Consent

The court of appeals concluded that Gordon's pleadings [3] asserted a claim for negligence **\*591** instead of battery because, as Gordon alleged, the officers did not intend to injure him and he did not resist arrest. 389 S.W.3d at 607. The court reasoned that Gordon's compliance indicated his consent to the arrest, thereby negating the contact's offensive nature. *See id.* (noting that "the officers' application of the handcuffs did not involve an offensive touching or contact of Gordon by the officers as required to constitute the intentional tort of assault or battery"). The court further suggested that Gordon's consent distinguished the case from other cases involving alleged excessive force or other offensive contact during an arrest. *Id.* at 607–08 (citing cases).

The City, of course, disagrees with the court's analysis, arguing that Gordon's compliance was not consent in any relevant legal sense. The City submits that Gordon did not volunteer to be arrested because he had no choice. *See, e.g.,* TEX. PEN.CODE §§ 38.03–.04 (criminalizing resisting arrest). Moreover, the City argues that Gordon clearly did not consent to have the handcuffs applied too tightly, else he would have no claim under any liability theory.

Several amici [4] support the City's position, arguing that using restraints on an arrestee is undoubtedly offensive to a reasonable sense of personal dignity and technically a battery

in the absence of privilege. Amici point to the Restatement, which recognizes that an arrest "usually involves conduct which, unless privileged, is an 'assault' or 'battery' " but that where the privilege exists "it justifies not only the confinement but also any conduct which is reasonably necessary to effect the arrest." RESTATEMENT (SECOND) OF TORTSS § 118, cmt. b (1965).

We agree that Gordon's compliance during the arrest was not legal consent to what otherwise would have been a battery. Preeminent tort authorities have noted that "[a]s to false imprisonment or battery, it is clear that yielding to ... the assertion of legal authority ... must be treated as no consent at all, but submission against the plaintiff's will ..." W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER & KEETON ON THE LAW OF TORTS, 121 (5th ed.1984). Even were we to agree that Gordon's compliance constituted consent to reasonable force, his pleadings indicate that the police exceeded that consent by applying the cuffs with excessive force.

Consent to contact "negatives the wrongful element of the defendant's act, and prevents the existence of a tort." *Id.* at 112; *see also Smith v. Holley,* 827 S.W.2d 433, 437 n. 3 (Tex.App.-San Antonio 1992, writ denied) (quoting PROSSER & KEETON). But exceeding consent makes the tortfeasor liable for the excess. *See* RESTATEMENT (SECOND) OF TORTS § 892A(4) (1965). Gordon's pleadings assert that he protested repeatedly that the handcuffs were too tight and causing him pain, thus plainly terminating any assumed consent. The court of appeals' reliance on Gordon's "consent" therefore fails to distinguish this case from other cases that have applied the Tort Claims Act's intentional-tort exception to arrests involving excessive-force allegations. *See, e.g., Morgan,* 175 S.W.3d at 418; *Rivera,* 146 S.W.3d at 337–38; *Nuno,* 94 S.W.3d at 789.

### *592 B. Intentional Tort or Unintended Injury

 [7]    Gordon argues that his case is different from other cases involving excessive force in that the police here did not intend to injure him. Quoting from *Reed Tool Co. v. Copelin*, Gordon further submits that the "fundamental difference" between a negligent injury and an intentional injury is the "specific intent to inflict injury." 689 S.W.2d 404, 406 (Tex.1985). Gordon reasons that, if a specific intent to inflict injury is an intentional tort, an unintended or accidental injury must conversely result from negligence. Although the City agrees

that any injury here was accidental, it does not agree that a worker's compensation case like *Reed Tool* has any relevance to the City's immunity claim.

In *Reed Tool*, an employee argued that the Texas Worker's Compensation Act should not limit his recovery because his employer intentionally caused his injury. The employee maintained that his employer exhibited that intent by willfully providing an unsafe workplace. *Id.* at 405. In holding that the employee's injury was not intentional, we reasoned that the failure to furnish a safe workplace was not the kind of actual intention to injure that robs the injury of its accidental character and thus avoids the exclusive remedy provision of the worker's compensation act. *Id.* at 406. Distinguishing intentional injuries from accidents, we observed that an employer's toleration of a dangerous condition might set the stage for an accidental injury but was not a "deliberate infliction of harm comparable to an intentional left jab to the chin." *Id.* at 407 (quoting 2A A. LARSON, THE LAW OF WORKER'S COMPENSATION § 69.13 (1982)). In line with that, we noted that "direct assaults by an employer on an employee" would fall within the act's intentional injury exception, elaborating further that the fundamental difference between accidental and intentional injuries was "the specific intent to inflict injury." *Id.* at 406.

 [8]    [9]    We agree with the City here that the distinction drawn in *Reed Tool* between intentional and accidental injuries is not particularly helpful in distinguishing a battery from negligence. Although a specific intent to inflict injury is without question an intentional tort, and many batteries are of this type, a specific intent to injure is not an essential element of a battery.[5] As already discussed, a battery does not require a physical injury, and thus it follows that an intentional physical injury is also not required.[6] In fact, even a harmful or offensive contact that is intended to help or please the plaintiff can be actionable as a battery.[7] According to the Restatement:

> If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact or of putting another in apprehension of either a harmful or offensive bodily contact, and  *593  such act causes a bodily contact to the other, the actor is liable to the other for a battery ... although the act was not done with the intention of bringing about the resulting bodily harm.
> RESTATEMENT (SECOND) OF TORTS § 16 (1965).

 **[10]**    That the defendant intends "bodily contact that is 'offensive' " is enough, then. 1 THE LAW OF TORTS § 33 at 81; *accord Fisher,* 424 S.W.2d at 630. Liability in battery moreover extends to harmful bodily contacts even though only offensive contacts were intended. [8] Thus, while we agree that intentional injuries are by definition a consequence of intentional torts, we do not agree with the notion that accidental injuries are never a consequence.

## IV. Excessive Force and the Texas Tort Claims Act

The gravamen of Gordon's complaint against the City is that its police officers used excessive force in effecting his arrest. Claims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not. *See City of San Antonio v. Dunn,* 796 S.W.2d 258, 261 (Tex.App.-San Antonio 1990, writ denied) (noting that injuries caused by excessively tight handcuffing "certainly cannot be attributed to the City as negligence"); *Cameron Cnty. v. Ortega,* 291 S.W.3d 495, 499 (Tex.App.-Corpus Christi 2009, no pet.) (allegations that deputy was negligent in his use of handcuffs and used excessive force held indistinguishable from assault as defined in the penal code). The District of Columbia Court of Appeals has explained the relationship between negligence and battery in this context:

> While it may be, as the trial court here noted, that the officers may have mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force. An unwanted touching may in its inception be intentional, a battery, or accidental, possibly negligent. But once it is found to be intentional, a battery tortfeasor is liable for the full range of consequences, intended or not, including harm and transferred liability. [citation omitted]. Therefore, where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with the privilege

having ended at the point where excessive force began. To instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion.

*District of Columbia v. Chinn,* 839 A.2d 701, 707 (D.C.2003). We agree that when an arrest, lawful in its inception, escalates into excessive-force allegations, the claim is for battery alone.

The court of appeals in this case is not the first Texas court to conclude that allegations of unintended injury during an arrest state a negligence claim. *See, e.g., City of Lubbock v. Nunez,* 279 S.W.3d 739, 742–43 (Tex.App.-Amarillo 2007, pet. granted & dism'd by agr.) (concluding that the death of an uncooperative suspect caused by a police officer's repeated use of a taser was unintentional and consequently the result of negligence). But again, we **\*594** agree with *Chinn* that such a conclusion is "doctrinally unsound." *Chinn,* 839 A.2d at 707. The actions of a police officer in making an arrest necessarily involve a battery, although the conduct may not be actionable because of privilege. *Love v. City of Clinton,* 37 Ohio St.3d 98, 524 N.E.2d 166, 167 n. 3 (Ohio 1988); *cf. Fuerschbach v. Sw. Airlines Co.,* 439 F.3d 1197, 1209 (10th Cir.2006) (applying New Mexico law to hold that use of handcuffs in a pranking incident is some evidence of contact that "offends a reasonable sense of personal dignity"). The officer is privileged to use reasonable force. *Petta,* 44 S.W.3d at 579. But a police officer's mistaken or accidental use of more force than reasonably necessary to make an arrest still "arises out of" the battery claim. *Dunn,* 796 S.W.2d at 261. "As the saying goes, there is no such thing as a negligent battery, since battery is defined to require an intentional touching without consent not a negligent one." 1 THE LAW OF TORTS § 31 at 77.

The Texas Tort Claims Act waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts, such as battery. TEX. CIV. PRAC. & REM.CODE § 101.057(2). Because Gordon alleges that the police used excessive force in his arrest, a claim that arises out of a battery, his pleadings do not state a claim for which governmental immunity has been waived under the Tort Claims Act. We accordingly reverse the court of appeals' judgment and render judgment dismissing the case.

**All Citations**

434 S.W.3d 586, 57 Tex. Sup. Ct. J. 683

Footnotes

1       "Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts." *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 n. 2 (Tex.2008).

2       *See Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 801 n. 4 (Tex.2010) (noting several courts' observation that the elements of civil and criminal assault are the same); *Forbes v. Lanzl,* 9 S.W.3d 895, 900 (Tex.App.-Austin 2000, pet. denied) (noting that elements of assault are the same in both civil and criminal cases); *Hogenson v. Williams,* 542 S.W.2d 456, 458 (Tex.Civ.App.-Texarkana 1976, no writ) (same); *see also* Comm. On Pattern Jury Charges, Texas Pattern Jury Charges—General Negligence § 6.6 (State Bar of Texas 2006) (using Penal Code's definition of assault in civil cases); *but see Miller ex. rel. Miller v. HCA, Inc.,* 118 S.W.3d 758, 767 (Tex.2003) (referring to a physician's act of operating without consent as a battery).

3       The court of appeals summarizes the substance of Gordon's pleadings in the following footnote:

> [O]ne evening City of Watauga police pulled him over on suspicion of driving while intoxicated; after Gordon politely refused to perform field sobriety tests, the officers told him that he would be placed under arrest and handcuffed; Gordon "consented to the arrest and allowed the officer to place the cuffs on him without any resistance"; Gordon repeatedly informed the officer that the handcuffs were too tight and were hurting him, but the officer did not check the tightness of the handcuffs. Gordon pleaded that at the police station, after he had refused to perform any additional sobriety tests, he was told that he would be handcuffed and taken to jail. Gordon again consented, and the placement of handcuffs occurred without incident. Gordon told the officers that the handcuffs were too tight and were causing him pain. Again, the officers did not check or loosen the handcuffs. Gordon pleaded a negligence claim, pleading that the officers acted negligently in their use of tangible personal property, specifically the use of handcuffs, in one or all of the following ways: by failing to properly use the handcuffs as designed; by failing to follow proper policies and procedures as to the proper use of handcuffs; and by applying the handcuffs on him in a manner that was too tight on his wrists.

> 389 S.W.3d at 605 n. 1.

4       Amici include the Texas Municipal League, Texas City Attorney's Association, Texas Association of Counties, and Texas Association of Counties Risk Management Pool.

5       *Fisher,* 424 S.W.2d at 629–30; *see also Hall v. Sonic Drive–In of Angleton, Inc.,* 177 S.W.3d 636, 650 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (rejecting argument that an intent to injure is the only way to prevail on an assault claim).

6       *See* W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON TORTS 36–37 (5th ed. 1984) ("The defendant may be liable although ... honestly believing that the act would not injure the plaintiff.").

7       *See id.* at 41–42 ("[T]he Defendant may be liable even when intending only a joke, or even a compliment, as where an unappreciated kiss is bestowed without consent or a misguided effort is made to render assistance"); *see also Gravis v. Physicians & Surgeons Hosp.,* 427 S.W.2d 310, 311 (Tex.1968) (noting that battery action lies against physician who, with intent to cure the plaintiff, operated without plaintiff's consent).

8       *See, e.g., Caudle v. Betts,* 512 So.2d 389, 389 (La.1987) (holding that liability in battery extends to consequences which the defendant did not intend or even reasonably foresaw); *see also* 1 THE LAW OF TORTS § 45 (discussing the concept of extended liability or transferred intent applicable in battery but not in negligence).

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.